UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| AUDRA M. REYNOLDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:06 CV 64 CDP |
| ) | DDN |
| MICHAEL J. ASTRUE,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the court for judicial review of the final decision of defendant Commissioner of Social Security denying the application of plaintiff Audra M. Reynolds for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 401, et seq., and 1381 et seq. The action was referred to the undersigned United States Magistrate Judge for a recommended disposition under 28 U.S.C. § 636(b).

**1. Background**

On May 8, 2002, plaintiff applied for disability benefits. She alleged she became disabled on May 31, 1996, at the age of 23,[2] due to asthma, depression, and back pain. (Tr. 144, 215, 300).[3] She later amended her alleged onset date to January 31, 1999. (Tr. 28.)

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted as defendant in this suit. 42 U.S.C. § 405(g).

[2]Plaintiff was born on May 29, 1972. (Tr. 144.)

[3]Plaintiff previously filed applications for benefits in 2001, which were denied administratively. She alleged she was unable to work since May 31, 1996, due to asthma, back pain, and depression. She did not pursue any further action on these applications after they were denied. (Tr. 13, 60, 63, 108, 129.)

Following an evidentiary hearing on October 4, 2005, an administrative law judge (ALJ) denied benefits on December 15, 2005. (Tr. 13-23.) Because the Appeals Council denied review of the ALJ's decision (Tr. 5-7), it became the final decision of the Commissioner for review in this action.

### **2. General Legal Principles**

The court's role on judicial review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. Pelkey v. Barnhart, 433 F.3d 575, 577 (8th Cir. 2006). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that detracts from, as well as supports, the Commissioner's decision. See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). So long as substantial evidence supports that decision, the court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least 12 months. See 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A). A five-step regulatory framework governs the evaluation of disability in general. See 20 C.F.R. §§ 404.1520, 416.920; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Fastner v. Barnhart, 324 F.3d 981, 983-84 (8th Cir. 2003). If the Commissioner finds that a claimant is disabled or not disabled at any step, a decision is made and the next step is not reached. 20 C.F.R. § 404.1520(a)(4).

Here, the Commissioner determined that plaintiff did not have any past relevant work, but that there were sedentary jobs in significant numbers in the national economy that she can do. At this step, the

burden shifted to the Commissioner to prove that there is work in the economy that plaintiff can do. Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004).

### 3. Decision of the ALJ

In a December 15, 2005, decision denying benefits, the ALJ found that plaintiff suffered from degenerative disc disease, osteoarthritis, chronic obstructive pulmonary disease (COPD), and obesity, and that these impairments in combination were severe. (Tr. 17.)

The ALJ found that plaintiff has no past relevant work. But he found that based on her age, residual functional capacity (RFC), education, and past work experience, there were jobs existing in sufficient numbers in the national economy that she can perform. (Tr. 14.)

The ALJ considered all of the medical records, including the RFC assessment completed by Theodore W. Roberts, M.D.,[4] the psychiatric evaluation of Dr. K.P.S. Kamath, M.D.,[5] the neurological evaluation

---

[4]From October 1999 until July 2005, plaintiff frequently visited Theodore W. Roberts, M.D., her treating physician, for a variety of impairments. On July 15, 2005, Dr. Roberts completed an RFC assessment of plaintiff. He opined plaintiff suffered from COPD, chronic low back pain, osteoarthritis, and obesity. He opined plaintiff could lift 20 pounds occasionally, and 10 pounds frequently. She could stand or walk for 2 hours in an 8 hour workday, and could sit for six hours. He opined that her ability to push or pull with her upper extremities was limited, that she could occasionally climb, balance, stoop, kneel, crouch and crawl, and that she had no manipulative, visual, communicative, or environmental limitations. He noted her COPD caused occasional wheezing which limited her physical activity, along with her obesity, low back pain and osteoarthritis. (Tr. 496-500.)

[5]On April 2, 2002, plaintiff visited K.P.S. Kamath, M.D, for a consultive exam at the request of the Commissioner. She was pleasant and cooperative, had a normal mood and relevant, coherent, and appropriate speech. She was fully oriented and did not appear psychotic. Dr. Kamath opined plaintiff had dysthymic disorder, generalized anxiety disorder, personality disorder, and assigned her a Global Assessment of Functioning score of 60, indicating moderate symptoms.

Dr. Kamath noted that, in spite of her troubled past, plaintiff was coping quite well. He opined her ability to perform daily activities

-3-

completed by Robert E. Gardner, M.D., and the opinion of consultive psychologist Dr. Joan Singer.[6] (Tr. 16-20.)

The ALJ considered plaintiff's testimony, her subjective complaints, and her past.[7] He found variously that her activities of daily living were unimpaired but that her limitations in the stated areas of living related to her physical impairments. (Tr. 17, 21.) She was able to clean, shop, cook, and travel, pay her bills, maintain a residence, care for her children and her own grooming and hygiene, use

---

was "good" and that she could comprehend and follow instructions and perform simple repetitive tasks, but that her ability to handle stress and pressures from a work routine were "poor." He noted there was some degree of social isolation, but that she was able to care for her basic needs. (Tr. 643-45.)

[6]On July 9, 2002, non-examining psychologist Joan Singer, Ph.D., completed a Mental RFC Assessment of plaintiff. (Tr. 255-57.) She based her opinions on plaintiff's diagnosis of affective disorders and anxiety related disorders. (Tr. 241.) Dr. Singer opined plaintiff was *not significantly limited* in her ability to understand, remember, and carry out short and simple instructions, perform activities within a schedule, maintain regular attendance, be punctual, sustain an ordinary routine without supervision, make simple work related decisions, interact properly with the public and coworkers, maintain socially appropriate behavior, and respond appropriately to changes in the workplace setting.

Dr. Singer opined plaintiff was *moderately impaired* in her abilities to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workweek and workday without interruption from psychologically based symptoms, and to perform at a consistent pace without unreasonable rest periods. (Tr. 255-57.)

[7]Plaintiff testified that she begins her days by taking 12 to 16 pills, then goes back to sleep. She does chores around the house, waits for her children to get home from school, then takes 6 more pills. Her daughters help her clean and cook dinner, then she takes 10 to 16 more pills and goes to bed. She does not have a car, but does have a driver's license. She grocery shops once a month and takes her time, and must use a cane to walk. She does not do laundry, and has gone to church twice in a two month period. She testified that some of her pills cause drowsiness. (Tr. 41-44.)

Plaintiff reported being physically and sexually abused as a child by her stepfather. She also reported witnessing her father get crushed by a dump truck when she was 4 years old, resulting in his death. She was in foster care for most of her childhood. (Tr. 39, 644-45.)

-4-

telephones and directories, and use a post office. He found she was able to interact with her sister-in-law and her children. Citing Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), the ALJ found that plaintiff had consistent low earnings, no treating or examining physician's opinion was consistent with that of disability, she smoked despite complaining of breathing problems, and she was obese. Plaintiff was also able to care for and carry a 25-pound child in 1999, during the time she alleged she was disabled. (Tr. 15-20.)

The ALJ found that plaintiff had the RFC to occasionally lift and or carry 20 pounds and to carry 10 pounds frequently. She can stand or walk with normal breaks, for a total of at least 2 hours in an 8-hour workday, and she can sit for 6 hours. Her ability to push or pull is limited to 50 percent in her upper extremities due to her COPD, and she can occasionally climb ramps, stairs, ladders, ropes, and scaffolds, can occasionally balance, stoop, kneel, crouch, and crawl, and has no manipulative, visual, communicative, or environmental limitations. She is limited to simple, repetitive tasks, low work stress, and needs to be on oxygen for 80 percent of the day, which plaintiff can move around with. The ALJ found that plaintiff is not able to do a full range of sedentary work, but that she can perform some sedentary work in the national economy. (Tr. 22.)

### 4. Plaintiff's ground for relief

Plaintiff argues that the decision of the ALJ, that plaintiff sustains the RFC to perform some sedentary work, is not supported by substantial evidence.

### 5. Discussion

The RFC is "the most [a claimant] can still do despite" her "physical or mental limitations." 20 C.F.R. § 404.1545(a). When determining plaintiff's RFC, the ALJ must consider "all relevant evidence," but ultimately, the determination of the plaintiff's RFC is a medical question. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). As such, the determination of plaintiff's ability to function in the

workplace must be based on some medical evidence.  Id.; see also Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

The ALJ found plaintiff's impairments limited her RFC as follows:

> she can occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk, with normal breaks, for a total of at least 2 hours in an 8-hour workday, sit, with normal breaks, for a total of about 6 hours in an 8-hour workday, push and/or pull, including the operation of hand and/or foot controls, such as working in a factory, is limited in her upper extremities to 50% secondary to her chronic obstructive pulmonary disease, where she can occasionally climb ramps and stairs, occasionally climb ladders, ropes and scaffolds, occasionally balance, stoop, kneel, crouch and crawl, with no manipulative limitations, no visual limitations, no communicative limitations and no environmental limitations; and a limitation to simple, repetitive tasks and to low stress work, with the need to be on oxygen for 80% of the workday, which the claimant could move around with.

(Tr. 22.)

This RFC assessment is based on the assessment completed by Dr. Roberts, her treating physician. When determining the RFC, "[t]he opinions of the claimant's treating physicians are entitled to controlling weight if they are supported by and not inconsistent with the substantial medical evidence in the record." Stormo v. Barnhart, 377 F.3d 801, 805 (8th Cir. 2004). "Such opinions are given less weight if they are inconsistent with the record as a whole or if the conclusions consist of vague, conclusory statements unsupported by medically acceptable data." Id. at 805-06; Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). "By contrast, '[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence.'" Singh, 222 F.3d at 452 (quoting Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)). The ALJ must set forth his reasons for the weight given to a treating physician's assessment. Singh, 222 F.3d at 452.

Here, the ALJ did consider the opinion of treating physician Dr. Roberts when formulating his RFC. However, the ALJ did not consider the opinions of Dr. Roberts that plaintiff's conditions left her unable to work. On February 7, 2002, and again on June 5, 2003, Dr. Roberts

opined plaintiff was disabled and unable to work.[8] (Tr. 522-23, 514-15.) While the ultimate determination of disability is left to the Commissioner, Dr. Roberts's opinions that plaintiff could not work should have been considered as part of the record as a whole. See Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005). There is no indication in the record that the ALJ even considered these opinions because he did not mention them in his opinion.

Further, the ALJ did not mention any nonexertional mental limitations in his RFC beyond a limitation to perform simple, repetitive tasks and to low stress work. Nonexertional limitations are any limitations besides strength that reduce a person's ability to work. Sanders v. Sullivan, 983 F.2d 822, 823 (8th Cir. 1992). Mental limitations are to be analyzed under 20 C.F.R. § 416.920a. The ALJ discussed plaintiff's mental limitations in his opinion. He noted she had moderate limitations in social functioning, mild limitations in concentration, persistence and pace, but was able to function outside of a highly supportive living arrangement and independently outside her home. (Tr. 21.)

There is substantial medical evidence on the record that plaintiff suffered from mental limitations. Dr. Singer, a nonexamining consultive physician, opined that plaintiff had mental limitations of depression and anxiety. She found plaintiff was moderately limited with regards to concentration, persistence, and pace, the ability to carry out detailed instructions, to set independent goals, and to complete a normal workweek. (Tr. 255-56.) While the ALJ is not required to give

---

[8]These opinions were not conclusory statements regarding disability. Rather, on each of these occasions, Dr. Roberts filled out a Missouri state Medical Report Including Physician's Certification/Disability Evaluation. On June 5, 2003, he reported that plaintiff had a history of anxiety, depression and low back pain. He stated his diagnoses of low back pain, hyperlipidemia, anxiety, depression, and asthma. (Tr. 514-15.) On both occasions, he concluded the reports by stating his determination of plaintiff's "incapacity." He used the form language to find that "In my opinion this individual has . . . a mental and/or physical disability which prevents [her] from engaging in that employment or gainful activity for which his/her age, training, experience or education will fit him/her. . . . In my opinion the expected duration of disability/incapacity will be . . . 12 or more months . . . .." (Tr. 515, 523.)

great weight to a consulting physician's opinion, Kelley, 133 F.3d at 589, here, the ALJ stated that he found Dr. Singer's opinion "well rationalized," and did not explain why he found it not credible. Despite his finding that Dr. Singer's opinion was well rationalized, he does not adopt her findings and does not include these limitations in plaintiff's RFC assessment. There is no medical evidence on the record finding that plaintiff was only mildly limited with regard to concentration, persistence, and pace.

Further, Dr. Kamath, another consulting physician who met plaintiff once, opined that plaintiff's ability to handle stress and work-related pressures was poor, and that she suffered from some social isolation. (Tr. 643-45.) The ALJ does not discredit this opinion. Plaintiff's treating physician, Dr. Roberts, routinely diagnosed plaintiff with depression and anxiety, and plaintiff was taking a variety of drugs for this condition, including Seroquel,[9] Wellbutrin,[10] Risperdal,[11] Cymbalta,[12] and Celexa.[13] (Tr. 229.) See Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) (use of medication a factor to be considered). Further, plaintiff reported that this medication was often not working, or that it caused side effects such as drowsiness, which was not considered by the ALJ. See Tate v. Apfel, 167 F.3d 1191, 1197 (8th Cir. 1999) (type, dosage, effectiveness, and side effects of medications are factors to be considered).

---

[9]Seroquel is used to treat a variety of mental or mood conditions, such as bipolar disorder and schizophrenia. Webmd.com/drugs. (Last visited May 17, 2007.)

[10]Wellbutrin is used to treat depression. Webmd.com/drugs. (Last visited May 17, 2007.)

[11]Risperdal, or Risperidone, is used to treat a variety of mental or mood conditions, such as bipolar disorder, schizophrenia, or irritability associated with autism. Webmd.com/drugs. (Last visited May 17, 2007.)

[12]Cymbalta is used to treat major depression and nerve pain. Webmd.com/drugs. (Last visited May 17, 2007.)

[13]Celexa is an antidepressant medication. Webmd.com/drugs. (Last visited May 17, 2007.)

This evidence of plaintiff's nonexertional mental limitations is relevant, because the vocational expert testified that a person whose ability to handle work stress was poor would not be able to engage in consistent work activity. (Tr. 49-52.) Dr. Kamath, whose opinion the ALJ recounted but did not expressly discredit, found that plaintiff's ability in this area was poor. Further, the ALJ's findings that plaintiff was able to cook, travel, maintain a residence, and take care of her grooming are not supported by substantial evidence. Plaintiff testified her daughters helped her cook and she did not travel except to the store once a month. She does not maintain an independent household because she lives with a friend, and at least one examining counselor noted that plaintiff's hygiene was bad. (Tr. 600-02.)

Because there is substantial evidence on the record concerning plaintiff's mental limitations, the ALJ's decision should be remanded for reconsideration of plaintiff's mental limitations and the opinions of Dr. Roberts that plaintiff was unable to work, and for making the necessary express findings and conclusions.

### **RECOMMENDATION**

For the reasons set forth above, it is the recommendation of the undersigned that the decision of the Commissioner of Social Security be reversed and remanded for further proceedings under Sentence 4 of 42 U.S.C. § 405(g).

The parties are advised that they have ten (10) days in which to file written objections to this Report and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.

    /S/  David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on August 7, 2007.